UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| _____ ) | |
| HECTOR MOLINA-AVILES, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 10-cv-953 (RMC) |
| ) | (Consolidated) |
| ) | |
| DISTRICT OF COLUMBIA and ) | |
| KELVIN KING ) | |
| ) | |
| Defendants. ) | |
| ) | |
| _____ ) | |

MEMORANDUM OPINION

Hector Molina-Aviles and nineteen others complained that Metropolitan Police Department Officer Kelvin King, sued in his individual capacity, owes them damages for alleged constitutional violations that led to their separate convictions for driving while intoxicated (DWI).[1]  Officer King moves to dismiss, arguing that his alleged conduct does not meet the standard for a substantive due process claim; that Plaintiffs failed to allege that Officer King acted with the requisite culpability; and that qualified immunity bars this action.  The motion will be denied without prejudice.

---

[1] On August 27, 2010, the Court consolidated Civil Case Nos. 10-953, 10-954, 10-955, 10-956, 10-957, 10-958, 10-959, 10-960, 10-1088, 10-1096, 10-1102, 10-1181, 10-1183, 10-1185, 10-1188, 10-1204, 10-1205, 10-1207, and 10-1214.  All of the complaints make the same allegations but were filed by different individuals charged and convicted of DWI.  *See* Order Consolidating Cases [Dkt. # 18].  On June 23, 2011, the Court dismissed all but four Plaintiffs. *See* Mem. Op. [Dkt. # 33].  Then, the Court reopened and stayed Civil Case No. 10-1188 (Plaintiff Aaron Clements).  *See* Order [Dkt. # 38].  Thus, the remaining cases in this consolidated action are:  Civil Nos. 10-958 (Plaintiff John Fenwick); 10-1097 (Plaintiff Lamarr Turner); 10-1214 (Plaintiff Hamid Manneh); 10-1096 (Plaintiff Jose Nunez); and 10-1188 (Plaintiff Aaron Clements).

## I.  FACTS

Plaintiffs allege constitutional violations arising in connection with their individual convictions for driving while intoxicated ("DWI").[2]  In the District of Columbia, a conviction for DWI requires that the prosecutor prove that a defendant's blood alcohol level reached .08 grams per 210 liters of breath or above.  D.C. Code § 50-2201.05(b)(1)(A)(i)(I).   In each case, proof of this element was supplied by each Plaintiff's measured blood alcohol level tested on an Intoxilyzer 5000EN machine.  However, on February 26, 2010, the District of Columbia announced that due to erroneous calibrations, its Intoxilyzer machines were generating readings that were too high; Plaintiffs allege that the readings were approximately thirty percent (30%) higher than a person's actual blood alcohol level.  Compl. ¶¶ 92, 134.[3]

As a result, Plaintiffs' convictions for DWI that relied upon such Intoxilyzer tests became immediately suspect.  In subsequent proceedings, the DWI charges against Plaintiffs Fenwick, Turner, Manneh, and Nunez have been vacated or dismissed.  Messrs. Fenwick, Turner, and Manneh originally pled guilty to the DWI charge.  Later, Mr. Fenwick withdrew his guilty plea and all charges against him were dismissed.   Pls.' Second Mem. Regarding Changed Status [Dkt. # 31] at 4-5.  Plaintiffs Manneh and Turner also withdrew their guilty pleas, and the DWI charges against them were dismissed.  *Id*. at 5-6.  Plaintiff Nunez contested the DWI

---

[2] Individuals charged with DWI are also often charged with Driving Under the Influence ("DUI") and Operating While Impaired ("OWI").  DUI is driving while under the influence of intoxicating liquor, and OWI is defined as driving while impaired by the consumption of intoxicating liquor.  *See* D.C. Code § 50-2201.05(b)(1)(A)(i)(II);  D.C. Code § 50-2201.05(b)(2)(A).

[3] While the citations refer to the Complaint in Civil Case No. 10-953, all Plaintiffs make the same allegations.

charge, but was found guilty after trial. *Id.* Then, on August 20, 2010, upon motion by the

District of Columbia, Plaintiff Nunez's conviction for DWI was vacated. *Id.* at 9 n.8.[4]

Officer King was head of the Impaired Driver Support Unit at D.C. Metropolitan

Police Department ("MPD") at all times relevant to these consolidated cases. He was the

principal officer responsible for calibrating the breath test machines and testing them for

accuracy. Compl. ¶ 35-36. The District's Office of the Medical Examiner ("OME") delegated

its responsibility for maintaining and calibrating the breath test machines to the Impaired Driver

Support Unit, as well as its responsibility for testing the machines for accuracy. *Id.* ¶ 38.[5]

Thereafter, the OME failed to oversee the calibration or accuracy testing of the Intoxilyzers, even

though MPD continued to use a Chemical Test Certification Form (PD 809) that stated that the

Intoxilyxers had been tested and found to be accurate within the past three months by the OME.

*Id.* ¶¶ 63-67, 70.

The manufacturer of the Intoxilyzer provided the District with specifications to

ensure the accuracy and reliability of the machines, which required the use of a simulator. *Id.* ¶¶

78-79.

> To be valid, the simulator introduces the gas of a simulator
> solution into the Intoxilyzer. This simulator solution must be of a
> known value that is independently tested and verified. The
> simulator uses this solution to create alcohol saturated air of a
> known value. That air is then pumped into the machine and tested.

---

[4] The DUI and OWI charges against Messrs. Turner and Manneh remain and have been
set for trial. Pls.' Second Mem. Regarding Changed Status [Dkt. # 31] at 6. Mr. Nunez's
convictions for DUI and OWI also remain. *See* D.C. Response [Dkt. # 29] at 2. A fifth Plaintiff,
Mr. Clements, also withdrew his guilty plea, but the DWI charge against him remains pending.
His case is stayed pending the resolution of that charge.

[5] This delegation occurred in approximately February 2007. *Id.* ¶ 67.

> Because the value of the alcohol saturated air is known, that known
> value can be compared to the score generated by the machine to
> determine if the machine is properly calibrated.  A properly
> calibrated machine will report that the simulator gas is the known
> value; an improperly calibrated machine will report a different
> value. . . . [A] properly calibrated and accurate Intoxilyzer will test
> [the simulator] to read 0.10 grams per 210 liters of breath.
>
> In addition, the manufacturer's specifications include procedures
> for calibrating the machine for accuracy.  Similar to the simulator,
> this procedure consists of testing the machine against a series of
> known simulator solutions in various amounts. . . .
>
> In addition, the manufacturer's specifications include procedures
> for proper maintenance of the machine in order to keep it in
> accurate, good working order.

*Id.* ¶¶ 80-83.  Plaintiffs claim that the District failed to follow the manufacturer's specifications

concerning the maintenance, calibration, and accuracy testing of the breath test machines, *id.*

¶ 84, and that the machines were calibrated to generate erroneously high readings.  *Id.* ¶ 91.

Officer King "was directly responsible for calibrating the Intoxilyzer to read

breath alcohol levels, on average, 30% too high."  *Id.* ¶ 95.  Instead of following the

manufacturer's specifications, Plaintiffs allege that MPD would keep and use stale and

uncertified simulator solutions or create its own erroneous simulator solutions.  Also, despite

possessing brand new breath test machines — the Intox EC/IR, which used more modern

technology — Officer King did not use the new machines.  *Id.* ¶¶  105-09.

The Complaint avers that MPD officers and prosecutors in the Office of the

Attorney General of the District of Columbia ("OAG") were well aware of the improper

calibration of the Intoxilyzers but continued to use them and rely on them in court.  *Id.* ¶¶ 114-19.

In early 2008, the OAG consulted an expert to assess the validity of its breath scores in a specific

case. "The expert's investigation revealed that neither the OME nor the MPD's [Impaired Driver Support Unit] was testing the Intoxilyzer for accuracy. The expert told the District that none of the scores [was] valid if the accuracy tests were not done. The expert told the District that it needed to change the program and insure that the accuracy tests were done before any scores could be properly proffered in Court." *Id.* ¶¶ 122-28. Despite this advice, no changes were made. MPD continued to use improperly calibrated Intoxilyzers and OAG continued to prosecute based on inaccurate results until February 26, 2010, when D.C. announced that the MPD had become aware of a potential problem with the accuracy of the machines. After some investigation, Officer King was exonerated. The Complaint alleges that the District's custom, policy or practice caused the constitutional violations at issue. *Id.* ¶¶ 163, 178. Further, the Complaint asserts that Officer King's intentional or reckless conduct — in sanctioning the continued use of the improperly calibrated and tested Intoxilyzer machines for over two years — caused the constitutional violations alleged. *Id.* ¶¶ 222-29.

> Pursuant to 42 U.S.C. § 1983, Plaintiffs allege the following:
>
> Count I – Violation of Substantive Due Process under the Fifth Amendment, against the District of Columbia;
>
> Count II – Violation of Substantive Due Process under the Fifth Amendment due to Failure to Supervise or Train, against the District of Columbia;[6]
>
> Count III – Violation of Substantive Due Process under the Fifth

---

[6] To recover on a failure to train or supervise claim, a plaintiff must establish "that the need for more or different training or supervision was so obvious and the inadequacy so likely to result in a violation of constitutional rights that the policymakers can be said to have been deliberately indifferent to the need." *Rogala v. District of Columbia*, 161 F.3d 44, 56 (D.C. Cir. 1998). The failure to train or supervise must be a proximate cause of the ultimate injury suffered by the plaintiff. *City of Canton v. Harris*, 489 U.S.378, 388-89 (1989).

Amendment due to Failure to Turn Over Exculpatory Material,
against the District of Columbia;

Count IV – Violation of the Right to be Free of Cruel and Unusual
Punishment under the Eighth Amendment, against the District of
Columbia; and

Count V – Violation of Substantive Due Process under the Fifth
Amendment, against Officer King in his personal capacity.

Plaintiffs claim damages because they were "wrongfully convicted of a DWI and
wrongfully sentenced to mandatory jail time, strip searched in jail, forced to serve post-
incarceration probation, forced to suffer the loss of [their] driving privileges, forced to suffer the
payment of increased insurance premiums, forced to suffer consequences at [their] job[s] due to
missing work days from serving jail time, and forced to suffer emotional distress, mental
anguish, loss of reputation, and travel restrictions from being falsely and unlawfully convicted of
a DWI." *Id.* ¶ 230.

## II. STANDARD OF REVIEW

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6)
challenges the adequacy of a complaint on its face, testing whether a plaintiff has properly stated
a claim. Fed. R. Civ. P. 12(b)(6). A complaint must be sufficient "to give a defendant fair notice
of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550
U.S. 544, 555 (2007) (internal citations omitted). The facts alleged "must be enough to raise a
right to relief above the speculative level." *Id.* A court must treat the complaint's factual
allegations as true, "even if doubtful in fact." *Twombly*, 550 U.S. at 555. But a court need not
accept as true legal conclusions set forth in a complaint. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949
(2009). "While legal conclusions can provide the framework of a complaint, they must be

supported by factual allegations.  When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id*. at 1950.

In deciding a motion under Rule 12(b)(6), a court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits or incorporated by reference, and matters about which the court may take judicial notice.  *Abhe & Svoboda, Inc. v. Chao*, 508 F.3d 1052, 1059 (D.C. Cir. 2007) (internal quotation marks and citation omitted).  To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is "plausible on its face."  *Twombly*, 550 U.S. at 570.

### III. ANALYSIS

Under 42 U.S.C. § 1983,[7] Plaintiffs seek to hold Officer King liable for violation of their Fifth Amendment right to due process.  Officer King presents multiple reasons to dismiss the claims against him.  He contends that Plaintiffs' allegations, taken as true, do not show that his conduct violated a constitutional right.  *See Saucier v. Katz*, 533 U.S. 194, 201 (1999).   He also asserts qualified immunity.  Qualified immunity shields a government official from liability

---

[7]  Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.

under § 1983 provided the official's conduct did not violate a clearly established constitutional

right of which a reasonable officer would have known. *Wilson v. Layne*, 526 U.S. 601, 609

(1999). The Court can address either question first. *Pearson v. Callahan*, 555 U.S. 223, 236

(2009).

### A.  Plaintiffs Allege Violation of Substantive Due Process

Plaintiffs allege that Officer King violated their rights to substantive due process

under the Fifth Amendment to the Constitution, based upon their right "to be free from criminal

conviction based upon inaccurate and unreliable evidence manufactured by the District." *Id.* ¶

220.[8]

In order to establish a substantive due process claim, a plaintiff must show that the

state actor was deliberately indifferent to his constitutional rights such that the conduct "shocks

the conscience." *Estate of Phillips v. Dist. of Columbia*, 455 F.3d 397, 403 (D.C. Cir. 2006).[9]

---

[8] Because the District of Columbia is a political entity created by the federal government, it is subject to the Fifth Amendment and not the Fourteenth, which applies to the States. *Propert v. District of Columbia*, 948 F.2d 1327, 1330 n.5 (D.C. Cir. 1991) (citing *Bolling v. Sharpe*, 347 U.S. 497, 499 (1954)). The Fifth Amendment provides that no person "shall be deprived of life, liberty, or property, without due process of law . . . . " and the Fourteenth Amendment provides that "no State shall . . . deprive any person of life, liberty, or property, without due process of law." The same analysis that applies to a substantive due process claim under the Fourteenth Amendment applies to a substantive due process claim under the Fifth Amendment. *Piechowicz v. U.S.*, 885 F.2d 1207, 1214 n.9 (4th Cir. 1989).

[9] "A litigant may make a substantive due process claim for police misconduct so long as [his] claim is not 'covered by a specific constitutional provision, such as the Fourth or Eighth Amendment." *Robinson v. Dist. of Columbia*, 736 F. Supp. 2d 254 (D.D.C. 2010) (citing *U.S. v. Lanier*, 520 U.S. 259, 272 n.7 (1997)). While Count IV of the Complaint purports to state an Eighth Amendment claim, in fact it does not. The Eighth Amendment proscribes cruel and unusual punishment — that is, it prohibits disproportionate punishment, the unnecessary and wanton infliction of pain, and conduct with regard to inmates that is repugnant to decency. *Farmer v. Brennan*, 511 U.S. 825 (1994). Because Plaintiffs allege facts that make out a Fifth Amendment claim and they do not allege facts that make out an Eighth Amendment claim, the

This "stringent requirement exists to differentiate substantive due process, which is intended only to protect against arbitrary government action, from local tort law." *Butera v. District of Columbia*, 235 F.3d 637, 651 (D.C. Cir. 2001). Negligence alone is insufficient to establish a claim under § 1983. *Daniels v. Williams*, 474 U.S. 327, 331 (1986); *see also Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 849 (1998) ("the Constitution does not guarantee due care on the part of state officials; liability for negligently inflicted harm is categorically beneath the threshold of constitutional due process."); *DeShaney v. Winnebago Cnty. Social Servs. Dep't*, 489 U.S. 189, 202 (1989) (the Due Process Clause "does not transform every tort committed by a state actor into a constitutional violation").

The Due Process Clause was intended to secure the individual from arbitrary exercises of governmental power. *Daniels*, 474 U.S. at 330. "[I]n a due process challenge to executive action, the threshold question is whether the behavior of the governmental officer is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *County of Sacramento*, 523 U.S. at 847 n.8; *accord Butera v. Dist. of Columbia*, 235 F.3d 637, 651 (D.C. Cir. 2001). Conduct "shocks the conscience" when the "conduct [was] *intended* to injure in some way." *Cnty. of Sacramento*, 523 U.S. at 849.

The Supreme Court has determined that one type of government conduct that violates substantive due process is the knowing use of false evidence to obtain a conviction. *Napue v. Illinois*, 360 U.S. 264, 269 (1959). *Napue* involved a prosecutor's failure to correct the false testimony of a government witness that the witness had not been promised consideration in return for his testimony. The Supreme Court determined that "a conviction obtained through use

_____

Eighth Amendment claim (Count IV) will be dismissed.

of false evidence, known to be such by representatives of the State," or allowed by the State to "go uncorrected," violates due process.  *Id.* at 269.

   In *Devereaux v. Abbey*, 263 F.3d 1070, 10-74-75 (9th Cir. 2001), the Ninth Circuit also recognized the "clearly established constitutional due process right not to be subjected to criminal charges on the basis of false evidence that was deliberately fabricated by the government."  The court opined that "the wrongfulness of charging someone on the basis of deliberately fabricated evidence is sufficiently obvious, and *Pyle [v. Kansas*, 317 U.S. 213 (1942), involving the knowing use of perjured testimony] is sufficiently analogous, that the right to be free from such charges is a constitutional right."  *Id.*; *see also Castellano v. Fragozo*, 352 F.3d 939, 955 (5th Cir. 2003) (the manufacturing of evidence violated the Due Process Clause); *Bibbins v. City of Baton Rouge*, 489 F. Supp. 2d 562,  (M.D. La. 2007) (while manufacturing false evidence "indisputably" would deny a defendant due process, inaccurate or mistaken testimony does not constitute fabrication of evidence).

   The Complaint alleges that Officer King learned from the expert retained by the Office of Attorney General that the Intoxilyzer had to be properly calibrated and tested but thereafter failed to correct his calibration and accuracy testing problems, *see* Compl. ¶ 225, and that Officer King's actions or inactions were intentional or reckless.  *Id.* ¶ 229.  These allegations — which, for immediate purposes, the Court must accept as true and interpret in the light most favorable to Plaintiffs — preclude finding that Plaintiffs have failed to allege a constitutional violation.  Mere negligence by Officer King would be insufficient to support Plaintiffs' allegations.  And the repeated references by the Defendant that Officer King is alleged merely to have failed to use updated equipment because he did not want to be trained, if that were all

Plaintiffs alleged, would be insufficient.  The Complaint contains more, however.  It alleges that: 1) Officer King used stale solution, or his own homemade version, and other erroneous calibration/testing processes in preparing the Intoxilyzers for use; 2) the District retained an expert, who advised Officer King that his methodologies were improper and his results were worthless; 3) despite this knowledge, Officer King failed to correct his processes and knowingly and recklessly allowed erroneous testing to continue and be presented in court; and 4) Plaintiffs were convicted of DWI, by plea or trial, based on evidence that Officer King knew, and had known for a long time, to be inaccurate.

A conviction obtained through the knowing use of false evidence, or through the knowing failure to correct false evidence, violates due process.  *Napue*, 360 U.S. at 269. Assumed to be true, Plaintiffs' allegations do not assert mere negligence; they aver the knowing and intentional manufacture of false evidence.  Plaintiffs have alleged a substantive due process claim under the Fifth Amendment against Officer King.

## B. Qualified Immunity

In addition to seeking dismissal for failure to state a claim, Officer King moves to dismiss the claim against him based on qualified immunity.  Qualified immunity is "a defense that shields officials from suit if their conduct 'd[id] not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  *Ortiz v. Jordan*, 131 S. Ct. 884, 888 (2011) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  "In developing the doctrine of qualified immunity, the Supreme Court has sought to strike a balance 'between the interests in vindication of citizens' constitutional rights and in public officials' effective performance of their duties.'"  *Int'l Action Ctr. v. United States*, 365 F.3d 20, 24 (D.C. Cir. 2004)

(quoting *Anderson v. Creighton*, 483 U.S. 635, 639 (1987)).  A federal official can be liable

individually but "that official must have violated a constitutional right, *and* that right must have

been 'clearly established' – 'the contours of the right must be sufficiently clear that a reasonable

official would understand what he is doing violates that right.'"  *Id*. (quoting *Anderson*, 483 U.S.

at 640).

        The Fifth Circuit has held that qualified immunity does not bar a substantive due

process claim for the knowing manufacture of false evidence.  In *Young v. Biggers*, 938 F.2d 565

(5th Cir. 1991), the plaintiff alleged that the Chief of Police and a police detective persuaded two

alleged accomplices in the armed robbery to "implicate him" and "falsely to identify him as the

perpetrator of the crime."  *Id.* at 569.  The Fifth Circuit reversed the lower court's dismissal of

the complaint:

> Public officers are shielded from liability for civil damages insofar
> as their conduct does not violate clearly established statutory or
> constitutional rights of which a reasonable person would have
> known.  A reasonable person, however, surely would realize that
> "framing" someone for a crime that he did not commit deprives
> that person of his constitutional rights.  We cannot conclude to a
> certainty, therefore, that Young cannot recover [from the officers].

*Id.* at 570.   In other words, the officers would not be entitled to qualified immunity if Mr. Young

could prove that they knowingly presented false information in the affidavit for his arrest

warrant. *Id.* n. 9.

        This Court cannot determine whether qualified immunity shields Officer King

from personal liability on the current, undeveloped record.  The Complaint alleges that Officer

King learned from the retained expert that his methods were wrong and yet he knowingly failed,

for years, to make any corrections.  As indicated above, if true, these allegations suggest the

intentional manufacture of false evidence, which has been found to violate due process since *Napue v. Illinois*.  Only discovery can bring an accurate fact record to light, upon which it may be that Officer King is or is not protected by qualified immunity.

## IV.  CONCLUSION

Officer King's motion to dismiss [Dkt. # 16] will be denied without prejudice.[10] Because Plaintiffs have alleged a Fifth Amendment substantive due process claim and they have not alleged an Eighth Amendment claim, Count IV, purporting to assert an Eighth Amendment claim against the District of Columbia, will be dismissed.  A memorializing Order accompanies this Memorandum Opinion.


Date: November 14, 2011                              _____/s/_____
                                                      ROSEMARY M. COLLYER
                                                      United States District Judge

---

[10] The Court expresses no opinion regarding whether or not the District might, after relevant discovery, prevail on a motion for summary judgment.